## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES HORTON,

     Plaintiff,        Case No.
                Hon.

v

DEPUTY RYAN BOUCHER and
DEPUTY J. AIRD, in their
individual capacities; OAKLAND
COUNTY, a municipal corporation,

     Defendants.

---

Giroux PappasTrial Attorneys
Robert M. Giroux (P-47966)
Christian P. Collis (P-54790)
Attorneys for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, MI 48034
(248) 531-8665
ccollis@greatMIattorneys.com

---

## COMPLAINT AND JURY DEMAND

---

NOW COMES Plaintiff, JAMES HORTON, by and through his attorneys, GIROUX PAPPAS TRIAL ATTORNEYS, and for his Complaint against the above-named Defendants, states as follows:

1. At all times relevant to this lawsuit, Plaintiff James Horton was a resident of the Township of Oxford, County of Oakland, State of Michigan.

2.      Defendant Oakland County is a Michigan municipal corporation, duly organized and carrying on governmental functions in the County of Oakland, State of Michigan, and is the body responsible for the control and oversight of its departments, agencies and facilities including the Oakland County Sheriff's Department ("OCSD"), as well as its deputies and employees, including, but not limited to Defendants Boucher and Aird.

3.      Upon information and belief, Defendants Ryan Boucher and J Aird (his first name is presently unknown) are citizens of the State of Michigan and were at all times relevant to this action, employed as Sheriff Deputies by the OCSD.

4.      Throughout the events giving rise to this Complaint, the individual Defendants were at all times acting in their respective individual capacities, within the course and scope of their employment as deputies employed by the OCSD, and under color of law.

5.      This lawsuit arises out of events occurring within the Township of Oxford, County of Oakland, and State of Michigan.

6.      Defendants are jointly and severally liable to Plaintiff for the claims asserted therein.

## **JURISDICTION AND VENUE**

7.      This cause of action involves violations of Plaintiff's civil rights, as

secured by the United States and Michigan Constitutions, and is brought pursuant to 42 U.S.C. § 1983 and pendant claims arising under Michigan law.

8.     This Court has jurisdiction over the claims brought pursuant to 42 U.S.C. § 1983 based upon the laws of the United States pursuant to 28 U.S.C. §§ 1331, 1343.  This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

9.     The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

10.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Oakland, and Defendant Oakland County (specifically the Sheriff's Department) is a municipal corporation within this district.

## <u>COMMON FACTUAL ALLEGATIONS</u>

11.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 10, as if fully set forth herein.

12.     On September 11, 2021, Plaintiff James Horton was at his home in Oxford Township.

13.     Plaintiff's son, who was home with Plaintiff, had called his mother (Plaintiff's wife) and told her that Plaintiff had said he was suicidal.

14.     Plaintiff, however, was intoxicated and was not demonstrating suicidal

tendencies and had not shown any indication of actually intending to commit suicide.

15.    Plaintiff's wife then called 9-1-1, which resulted in deputies from OCSD being dispatched to Plaintiff's home.

16.    Defendant Aird and another deputy (Wakerly) were the first to arrive at the scene.

17.    Upon arrival and being let inside by Plaintiff's son, Defendant Aird spoke to Plaintiff, who despite being visibly intoxicated, was responsive to Aird and repeatedly stated that he was fine and not suicidal.

18.    Defendant Boucher was the third deputy to arrive on scene, and when he did, Plaintiff's wife also arrived on the scene.

19.    While Defendant Boucher observed that Plaintiff was visibly intoxicated, he also observed that Plaintiff was agreeable to listen to the deputies, allowed his vitals and a preliminary breath test to be taken, and was generally cooperative.

20.    Along with these observations, Plaintiff's wife also told both Defendants and responding fire department personnel that Plaintiff was not really suicidal, he was just intoxicated and used the statement as a ploy to get her to come home.

21.    Despite that none of the Defendants observed Plaintiff commit any

acts evidencing that he was either a danger to himself or others (and that Plaintiff's wife had told Defendants he was not), Defendants informed Plaintiff they were going to involuntary commit him based on his mental condition.

22.     Plaintiff told Defendants that he would not go unless Defendants had a warrant—evidence that Defendants did not properly appraise Plaintiff of whatever actions they were taking pursuant to MCL 330.1426, 330.1427, and 330.1427a—to wit Defendants persisted they were going to remove him from the home.

23.     During this encounter, Plaintiff repeatedly expressed to Defendants that he felt their attempt to force him (and what he reasonably believed was an arrest) from his home was a violation of his civil rights.

24.     Indeed, to the extent Defendants were attempting to take Plaintiff into protective custody, Defendants never informed Plaintiff of this, instead leading him to believe (both by their statements and actions, such as refusing to allow him to leave his kitchen) that Plaintiff was under arrest.

25.     Given Defendants persisted, Plaintiff attempted to blockade himself in his kitchen with chairs.

26.     At this point, Defendants Boucher and Aird approached Plaintiff and grabbed a chair he had in his hands.

27.     Defendants, both large men, then forcibly took Plaintiff to the ground, who at this point was not resisting.

28.     Despite having Plaintiff restrained, Defendant Boucher proceeded to inflict at least eight closed fist strikes (punches) to Plaintiff's arm and ribs.

29.     Concurrently, Defendant Aird then struck Plaintiff three times in the face with a closed fist and also at least once to his body.

30.     At no point did Plaintiff resist or refuse Defendants' commands and/or threaten or act in a threatening manner to Defendants, yet they still proceeded to beat him into submission.

31.     After this egregious beating, Defendants' had the third deputy (Wakerly) place handcuffs on Plaintiff and Oxford Fire Department personnel transported him to the hospital.

32.     While at the hospital, Plaintiff was not treated for mental health conditions but instead for significant bruises to his shoulder and arm and also four displaced ribs.

33.     On or around September 27, 2021 (approximately 16 days after these events), based on Defendants' description of these events, which falsely described as aggressive and threatening to Defendants, Plaintiff was charged and arrested for a violation of MCL 750.81d, a felony of "assaulting, battering, resisting, obstructing, opposing person performing duty" in regards to Defendant Boucher.

34.     Not only did Defendants lack probable cause to effectuate what amounted to an arrest on September 11, 2021, but there was also no probable cause

that Plaintiff committed a violation of MCL 750.81d during his encounter with Defendant Boucher.

35.    Due to a lack of probable cause—and a number of other reasons evidencing the lack of justification of both Defendants conduct and the crime being charged—this charge was dismissed with prejudice on February 28, 2022 by Judge Nancy Carniak.

## COUNT I
## 42 U.S.C. § 1983—FALSE DETENTION, ARREST, IMPRISONMENT AND CONFINEMENT
## AS TO THE INDIVIDUAL DEFENDANTS

36.    Plaintiff hereby incorporates by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

37.    At all times relevant, Plaintiff had a clearly established right to liberty protected in the substantive components of the Due Process Clause of the Fourth and/or Fourteenth Amendment to the United States Constitution, including his right to personal safety and bodily integrity, his right to protection from unlawful searches and unlawful seizures and his right to not be seized unless upon a valid warrant and probable cause pursuant to the United States Constitution.

38.    Plaintiff had the following clearly established rights pursuant to the Fourth and Fourteenth Amendments:

    a.    to be free from arrest without probable cause
    b.    to be free from unreasonable search and seizure
    c.    to be free from false imprisonment

    d.     to be free from deprivation of liberty without due process

    e.     to be from wrongful detention/retention

    f.     to be from warrantless seizures or arrests based on false statements

39.    At all times relevant, as Sheriff's deputies acting under color of law, Defendants were required to obey the laws of the United States, including those laws identified under the Fourth/Fourteenth Amendments to the United States Constitution.

40.    Plaintiff's seizure on September 11 and arrest, detention and retention on or around September 27, 2021 as described herein were undertaken by Defendants without legal justification, probable cause and without regard to any legitimate law enforcement interest.

41.    Defendants' unlawful conduct, lacking any legal justification, amounted to a violation of Plaintiff's rights under the Fourth and/or Fourteenth Amendment of the United States Constitution, and those rights were clearly established at all times relevant to this cause of action, and which a reasonable person and police officer in the Defendants' position would have known.

42.    In violation of Plaintiff's clearly established constitutionally-protected rights under the Fourth/Fourteenth Amendment to the United States Constitution, each Defendant unlawfully and without justification subjected Plaintiff to an unreasonable search, seizure, arrest and detention.

43.    Defendants' failure to properly objectively view the situation and

make false statements in police reports that formed the basis for Plaintiff's subsequent arrest and detention/retention contravened Plaintiff's clearly established Fourth/Fourteenth Amendment rights.

44.    In addition to the initial unlawful seizure and deprivation of personal liberty and freedom being unreasonable, Plaintiff's subsequent arrest, detention and Defendants' investigation were unreasonable and unlawful.

45.    Each of the Defendants intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions in their reports and citations in order to justify the unreasonable search, seizure, and detainment of Plaintiff.

46.    Defendants' search, seizure, detainment and imprisonment of Plaintiff, when they knew or should have known that they lacked justification for the same, was in violation of clearly established law, and, therefore, Defendants are not entitled to qualified immunity.

47.    Defendants' search, seizure, detainment and imprisonment of Plaintiff was unreasonable and deprived Plaintiff of his personal liberty and/or freedom of movement against his will.

48.    As a direct and proximate result of Defendants' violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

    a.  Physical pain and suffering;
    b.  Mental anguish;
    c.  Emotional distress;
    d.  Fright and shock;
    e.  Denial of social pleasures and enjoyment;
    f.  Wage loss and loss of earning capacity;
    g.  Attorney fees;
    h.  Humiliation or mortification;
    i.  Reasonable medical bills and expenses for the past, present and future;
    j.  Punitive damages;
    k.  Exemplary damages; and
    l.  All other damages properly recoverable under law.

49.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT II**
**42 U.S.C. § 1983—MALICIOUS PROSECUTION**
**AS TO THE INDIVIDUAL DEFENDANTS**

50.     Plaintiff hereby incorporates by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

51.     At all times Plaintiff had a constitutional right pursuant to the Fourth and/or Fourteenth Amendment of the United States Constitution to be from malicious prosecution.

52.     At all times relevant, as Sheriff's deputies acting under color of law, Defendants were required to obey the laws of the United States, including those laws identified under the Fourth/Fourteenth Amendment to the United States Constitution.

53.     Defendants' conduct, amounting to a malicious prosecution as addressed above, resulted in a violation of Plaintiff's rights under the Fourth/Fourteenth Amendment as those rights were clearly established at all times relevant to this cause of action, and which a reasonable person and police officer in the Defendants' position would have known.

54.     The above-named individual Defendants are not entitled to qualified immunity.

55.     Both Defendants Boucher and Aird were present at the scene of the crime and initiated the charges that were subsequently brought against Plaintiff.

56.     Defendants influenced and/or participated in the prosecution against Plaintiff when they intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions as outlined above.

57.     Given Defendants had no evidence that Plaintiff violated MCL 750.81d and instead that Defendants falsified Plaintiff's conduct in their reports, there was not probable cause to arrest, detain, or charge Plaintiff with the aforementioned crimes.

58.     Defendants' false statements led to Plaintiff's arrest, confinement (including substantial and intrusive bond conditions) and criminal prosecution.

59.     Plaintiff suffered a deprivation of liberty as a consequence of the frivolous legal proceedings.

60.     The criminal proceedings ultimately resolved in Plaintiff's favor when the felony charge was dismissed by the Court with prejudice on February 28, 2022.

61.     In addition to being in violation of clearly established law, the Defendants' actions were objectively unreasonable under the totality of the circumstances and, therefore, the Defendants are not entitled to qualified immunity.

62.     As a direct and proximate result of Defendants' violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

a.  Physical pain and suffering;
b.  Mental anguish;
c.  Emotional distress;
d.  Fright and shock;
e.  Denial of social pleasures and enjoyment;
f.  Wage loss and loss of earning capacity;
g.  Attorney fees;
h.  Humiliation or mortification;
i.  Reasonable medical bills and expenses for the past, present and future;
j.  Punitive damages;
k.  Exemplary damages; and
l.  All other damages properly recoverable under law.

63.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT III
## 42 U.S.C. § 1983—EXCESSIVE FORCE
## AS TO THE INDIVIDUAL DEFENDANTS

64.     Plaintiff hereby incorporates by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

65.     At all times relevant, Plaintiff had a clearly established right to be free from unreasonable searches, unreasonable seizures, unreasonable detention, unnecessary force, unreasonable force, and excessive force pursuant to the Fourth/Fourteenth Amendment to the United States Constitution.

66.     At all times relevant, as Oakland County Sheriff Deputies acting under color of law, Defendants Boucher and Aird were required to obey the laws of the United States, including those laws identified under the Fourth/Fourteenth Amendment to the United States Constitution.

67.     In violation of Plaintiff's clearly established constitutionally-protected rights under the Fourth/Fourteenth Amendment to the United States Constitution, Defendants employed unnecessary, unreasonable, and excessive force against Plaintiff, thereby inflicting horrendous personal injuries upon Plaintiff.

68.     Defendants' use of force against Plaintiff, when they knew or should have known that they lacked justification and that Plaintiff (while) restrained, neither posed a threat or danger to Defendants, was in violation of clearly established law, and, therefore, Defendants are not entitled to qualified immunity.

69.    In addition to being in violation of clearly established law, Defendants' actions were objectively unreasonable under the totality of the circumstances and, therefore, they are not entitled to qualified immunity.

70.    Despite that Plaintiff neither resisted nor undertook any threatening acts towards Defendants, both Defendant Aird and Boucher proceeded to strike Plaintiff at least eight times in the body and face after he was restrained.

71.    As a direct and proximate result of Defendants' violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

    a.  Physical pain and suffering;
    b.  Mental anguish;
    c.  Emotional distress;
    d.  Fright and shock;
    e.  Denial of social pleasures and enjoyment;
    f.  Wage loss and loss of earning capacity;
    g.  Humiliation or mortification;
    h.  Reasonable medical bills and expenses for the past, present and future;
    i.  Punitive damages;
    j.  Exemplary damages; and
    k.  All other damages properly recoverable under law.

72.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all

15

such inadequacies.  The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT IV**
**FIRST AMENDMENT RETALIATION**
**PURSUANT TO 42 U.S.C. § 1983**
**AS TO THE INDIVIUDAL DEFENDANTS**

73.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 72, as if fully set forth herein.

74.     This action is brought pursuant to 42 U.S.C. § 1983 against the individual Defendants in their individual capacity.

75.     At all material times, the individual Defendants were acting within the scope of their employment and/or color of law and therefore owed Plaintiff the duty to avoid a violation of his constitutionally guaranteed rights.

76.     For purposes of the First Amendment and § 1983, Plaintiff engaged in protected activity when he opposed Defendants' conduct at his home as a deprivation of his civil liberties and when he expressly informed Defendants that

they were violating his civil rights.

77.    The United States Supreme Court has long held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.... The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451 (1987).

78.    Plaintiff's opposition was a matter of public concern as the Oakland County Sheriff's department and its officers' violation of civil rights such as Plaintiff opposed affects all citizens in the County.

79.    After Plaintiff opposed Defendants' concerted violation of his civil rights, Defendants escalated their behavior and became more aggressive towards Plaintiff.

80.    As a result of Plaintiff's vocal opposition to Defendants' violation of his civil rights, Plaintiff was subsequently assaulted, seized, and subsequently charged with a frivolous felony that arose from false statements regarding the events that followed Plaintiff's protected speech.

81.    Defendants, the individuals who Plaintiff opposed their violation of his civil rights directly to them, were then the same individuals who both viciously beat Plaintiff and made false statements in police reports in order to have felony

charges brought against Plaintiff.

82. The above referenced adverse conduct taken in response to Plaintiff's protected activity are adverse actions for purposes of a 1983 retaliation claim.

83. These adverse actions taken by Defendant officers were done as agents of Defendant Oakland County.

84. Not only did Plaintiff's protected activity involve a matter of public concern, but Defendants' animus towards the same was evident shortly thereafter (including the vicious beating Defendants' unreasonably inflicted on Plaintiff) and continued all the way to them falsifying the version of events to ensure charges were brought against Plaintiff.

85. Defendants retaliated against Plaintiff by using violent tactics, unlawfully seizing him, and effectuating criminal charges; all of which were done in a manner completely dissimilar to methods used by OCSD deputies in response to other similar circumstances.

86. Defendants' callous and repeated disregard for Plaintiff's rights rises to a level of deliberate indifference.

87. As a direct and proximate result of Defendants' violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

      a. Physical pain and suffering;
      b. Mental anguish;

    c.  Emotional distress;
    d.  Fright and shock;
    e.  Denial of social pleasures and enjoyment;
    f.  Wage loss and loss of earning capacity;
    g.  Attorney fees;
    h.  Humiliation or mortification;
    i.  Reasonable medical bills and expenses for the past, present and future;
    j.  Punitive damages;
    k.  Exemplary damages; and
    l.  All other damages properly recoverable under law.

88.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT V – MUNICIPAL LIABILITY
## INADEQUATE POLICIES/PROCEDURES/CUSTOMS, FAILURE TO TRAIN, RATIFICATION/ACQUIESENCE
## AS TO DEFENDANT OAKLAND COUNTY

89.     Plaintiff hereby incorporates by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

90.     Defendant Oakland County's liability as a political subdivision arises out of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

91.     Pursuant to 42 U.S.C § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Oakland County owed Plaintiff certain duties to properly hire, supervise, monitor, and train the above-named individual Defendants as well as its other Officers so as not intentionally violate the constitutional rights of individuals, including by unlawfully and unreasonably seizing individuals, falsifying statements to effectuate unlawful arrests, using excessive force absent justification and retaliating based on a citizen's protected speech, and in particular, under the circumstances which existed at all times relevant to this cause of action.

92.     Defendant Oakland County is liable pursuant to 42 U.S.C § 1983, in that its policies, procedures, regulations, and customs (or that it failed to enact policies, procedures, regulations, and customs) caused and was the impetus behind the violation of Plaintiff's constitutional rights as alleged in this Complaint.

93.     Defendant Oakland County through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to reckless indifference toward the constitutional rights of the general public, and toward Plaintiff specifically, in the following ways including, but not limited to:

a. Failing to properly train its officers, including the above-named individual Defendants, concerning seizures during an attempted civil commitment, the use of force, what constitutes First Amendment retaliation, and falsifying statements to elicit criminal charges;

b. Failing to hire and/or retain officers whose character and personality would not pose a potential danger to the public in general and Plaintiff in particular;

c. Failure to adequately monitor the conduct and behavior of its officers in general, but specifically the above-named individual Defendants—relative to past incidents of the unlawful and unreasonable seizure of individuals without probable cause, excessive of use force, First Amendment retaliation, and making false statements during investigations—despite written policies against such misconduct, failure to sufficiently punish officers for past incidents of such conduct, which has led to the formation of a custom that such misconduct will be encouraged and tolerated by the OCSD;

d. Failure to have proper policies, procedures, and training to deal with the circumstances that could amount to the constitutional deprivations that were inflicted here, including against persons such as Plaintiff;

e. Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control deputies, including the above-named individual Defendants, who are known or should have been known to engage in improper conduct like this case specifically but not limited to unlawful seizures and

arrests, excessive use of force, falsifying police reports to effectuate unlawful arrests, and violating citizens' First Amendment rights;

f.   Failure to supervise and/or train Officers to prevent violation of citizens' Constitutional rights;

g.   Sanctioning officers' unlawful, unconstitutional conduct by failing to adequately discipline or terminate officers who were known to have violated the Constitutional right of citizens on prior occasions, including but not limited to the above-named individual Defendants;

h.   Having a custom, policy, or practice of tolerating the violation of constitutional rights by officers;

i.   Ratifying the violation of constitutional rights by officers;

j.   Other acts and omissions which may be learned through the course of discovery.

94.   Defendant's callous and repeated disregard of Plaintiff's constitutional rights rises to the level of deliberate indifference.

95.   The individual Defendants' unconstitutional conduct was specifically ratified in this case when there was no follow-up or investigation by OCSD supervisory personnel, who instead blatantly relied on false statements in the police reports to proceed with felony charges against Plaintiff.

96.   Defendant's conduct in allowing and adopting this patent violation of Plaintiff's constitutional rights was done with malice and/or reckless indifference towards Plaintiff.

97.    Defendant maintained a custom of confusion and lack of supervision/communication between officers and supervisory personnel, with this disconnect resulting in Plaintiff's constitutional rights being disregarded.

98.    As a direct and proximate result of Defendants' violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

      a.  Physical pain and suffering;
      b.  Mental anguish;
      c.  Emotional distress;
      d.  Fright and shock;
      e.  Denial of social pleasures and enjoyment;
      f.  Wage loss and loss of earning capacity;
      g.  Attorney fees;
      h.  Humiliation or mortification;
      i.  Reasonable medical bills and expenses for the past, present and future;
      j.  All other damages properly recoverable under law.

99.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an

amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT VI**
**MALICIOUS PROCECUTION-STATE LAW**
**AS TO THE INDIVIDUAL DEFENDANTS**

100.   Plaintiff incorporates by reference each and every allegation contained in paragraph 1-99 as if fully set forth herein.

101.   The criminal prosecution that was initiated and continued by Defendants was eventually dismissed in favor of Plaintiff.

102.   As stated above, Defendants lacked probable cause to arrest and detain Plaintiff, specifically in the face of material misrepresentations that Defendants knew were untrue and formed the basis for the arrest warrant.

103.   Defendants took these actions with actual or constructive knowledge that Plaintiff did not commit the charged crime.

104.   Defendants' conduct was malicious and improper and led to Plaintiff's erroneous arrest, confinement (including substantial and intrusive bond conditions) and criminal prosecution.

105.   Defendants' malice is evidenced by an intention to deprive Plaintiff of his Constitutional Rights and prosecute him for a felony with the potential of substantial jail time despite an utter lack of probable cause.

106.   Defendants instituted and initiated the allegations of criminal activity against Plaintiff without probable cause and with malice or with a primary purpose other than bringing about justice through the proper adjudication of the claim.

107.   Defendants pursued these actions knowing the allegations were inconsistent and arose from falsified statements made by the Defendants.

108.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

    a.  Physical pain and suffering;
    b.  Mental anguish;
    c.  Emotional distress;
    d.  Fright and shock;
    e.  Denial of social pleasures and enjoyment;
    f.  Wage loss and loss of earning capacity;
    g.  Attorney fees;
    h.  Humiliation or mortification;
    i.  Reasonable medical bills and expenses for the past, present and future;
    j.  All other damages properly recoverable under law.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, in whatever amount they may be found to be entitled, together with interest, costs, reasonable attorney fees, and such other relief as the court deems just under the circumstances.

## COUNT VII
## FALSE IMPRISONMENT/ARREST-STATE LAW
## AS TO THE INDIVIDUAL DEFENDANTS

109.   Plaintiff incorporates by reference each and every allegation contained in paragraph 1-108 as if fully set forth herein.

110.   Defendants owed Plaintiff a duty to refrain from intentionally, falsely, and/or wrongfully arresting, detaining or effectuating the same of Plaintiff, which would cause foreseeable injury and/or a deprivation of liberty.

111.   As the officers in charge of establishing probable cause, Defendants owed Plaintiff a duty to make sure that they were truthful and honest in the investigation process, which includes not producing and relying on false statements in reports.

112.   Defendants, while at all times relevant herein were acting within the scope of their employment for the OCSD, and under color of law as law enforcement officers, intentionally initiated Plaintiff to be unlawfully seized, charged, arrested, restrained and detained under the pretense that he had violated the law, knowing that Plaintiff did not commit the crime.

113.   For all intents and purposes, Defendants detained and seized Plaintiff on September 11, 2021 without either probable cause of legal justification to effectuate what Plaintiff reasonably believed was an arrest given he was restrained and had no freedom to move his person.

114.   Defendants' act constitutes false arrest and imprisonment.

115.   Despite the lack of probable cause, Defendants proceeded to seize Plaintiff on September 11, 2021 and then effectuate the arrest and continued detention of Plaintiff.

116.   In causing Plaintiff's unlawful seizure, arrest and continued detention, Defendants caused Plaintiff to be charged with a felony, arrested, and placed under strict bond conditions for months.

117.   The deprivation of Plaintiff's personal liberty and freedom was unreasonable, unnecessary, and unlawful.

118.   Defendants' conduct leading to Plaintiff's wrongful seizure, arrest and detainment was not done in good faith for the above-referenced reasons.

119.   Defendants are not entitled to immunity because among other reasons, effectuating seizures and the arrest of individuals without probable cause is outside the scope of officers' authority.

120.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damage into the future, including but not limited to:

        a.  Physical pain and suffering;
        b.  Mental anguish;
        c.  Emotional distress;
        d.  Fright and shock;
        e.  Denial of social pleasures and enjoyment;
        f.  Wage loss and loss of earning capacity;
        g.  Attorney fees;
        h.  Humiliation or mortification;

      i.  Reasonable medical bills and expenses for the past, present and future;

      j.  All other damages properly recoverable under law.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, in whatever amount they may be found to be entitled, together with interest, costs, reasonable attorney fees, and such other relief as the court deems just under the circumstances.

Respectfully submitted,

*/s/ Christian P. Collis*
CHRISTIAN COLLIS (P54790)
ROBERT M. GIROUX (P47966)
Giroux Pappas Trial Attorneys
Attorneys for Plaintiff
28588 Northwestern Highway,
Suite 100
Southfield, Michigan 48034
(248) 531-8665
Dated:  October 20, 2022                  ccollis@greatMIattorneys.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES HORTON,

      Plaintiff,                                   Case No.
                                                  Hon.

v

DEPUTY RYAN BOUCHER and
DEPUTY J. AIRD in their
individual capacities; OAKLAND
COUNTY, a municipal corporation,

      Defendants.

---

Giroux Pappas Trial Attorneys
Robert M. Giroux (P-47966)
Christian P. Collis (P-54790)
Attorneys for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, MI 48034
(248) 531-8665
ccollis@greatMIattorneys.com

---

## DEMAND FOR JURY TRIAL

---

     Plaintiff, James Horton, through his attorneys, Giroux Pappas Trial

Attorneys, P.C., hereby demands Trial by Jury in this matter.

                         Respectfully submitted,

                         */s/ Christian P. Collis*
                         CHRISTIAN COLLIS (P54790)
                         ROBERT M. GIROUX (P47966)

Giroux Pappas Trial Attorneys
Attorneys for Plaintiff
28588 Northwestern Highway,
Suite 100
Southfield, Michigan 48034
(248) 531-8665

Dated:  October 20, 2022          ccollis@greatMIattorneys.com