UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HORTON,

    Plaintiff,

v.

RYAN BOUCHER, J. AIRD,
and COUNTY OF OAKLAND,

    Defendants.
_____/

Civil Case No. 22-12529
Honorable Linda V. Parker

## OPINION AND ORDER GRANTING OAKLAND COUNTY'S MOTION TO DISMISS

On October 20, 2022, Plaintiff James Horton initiated this civil rights lawsuit against Defendants Oakland County and Oakland County Sheriff Deputies Ryan Boucher and J. Aird. Mr. Horton alleges that Deputies Boucher and Aird violated his constitutional rights when they responded to a 911 call placed by Mr. Horton's wife, claiming that Mr. Horton was suicidal. Mr. Horton claims Oakland County is liable for its deputies' alleged constitutional violations.

The matter is presently before the Court on Oakland County's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8.) The motion has been fully briefed. (ECF Nos. 9, 10.) Finding the facts and legal arguments adequately presented in the parties' briefs, the Court is dispensing with

oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants Oakland County's motion.

## I. Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## II. Factual and Procedural Allegations

On September 11, 2021, Mr. Horton was at home with his son when his son called his mother, Mr. Horton's wife, stating that Plaintiff said he was suicidal. (ECF No. 1 at Pg ID 3, ¶¶ 12, 13.) Plaintiff was not demonstrating suicidal tendencies or showing any indication that he intended to commit suicide, although he was intoxicated. (*Id*. at Pg ID 3-4, ¶ 14.) Mr. Horton's wife called 911 and Oakland County Sheriff Deputies were dispatched to the home. (*Id*. at Pg Id 4, ¶ 15.)

Deputies Aird and Wakerly (who is not a defendant) were the first to arrive. (*Id*. ¶ 16.) Mr. Horton's son let the deputies into the home, where they spoke with Mr. Horton. (*Id*. ¶ 17.) Mr. Horton was responsive and repeatedly stated that he was fine and not suicidal, although he was visibly intoxicated. (*Id*.) Deputy

3

Boucher then arrived on the scene at the same time as Mr. Horton's wife. (*Id.* ¶ 18.)

Deputy Boucher observed that Mr. Horton was visibly intoxicated but that he cooperated with and listened to the deputies, allowing them to take his vitals and administer a preliminary breath test. (*Id.* ¶ 19.) Mr. Horton's wife told the deputies that Mr. Horton was not suicidal, only intoxicated, and that he used the threat of suicide to get her to come home. (*Id.* ¶ 20.) The deputies nevertheless indicated that they were going to involuntarily commit Mr. Horton based on his mental condition. (*Id.* ¶ 21.)

Mr. Horton refused to go and attempted to barricade himself in the kitchen with chairs. (*Id.* at Pg ID 5, ¶ 25.) He told the deputies that they were violating his civil rights by forcing him to go. (*Id.* ¶ 23.) Deputies Boucher and Aird approached Mr. Horton and grabbed a chair that Mr. Horton was holding. (*Id.* ¶ 26.) Deputies Boucher and Aird then forcibly took Mr. Horton to the ground. (*Id.* ¶ 27.) Mr. Horton did not resist and was restrained. (*Id.* at Pg ID 5-6, ¶ 27, 28.) Deputies Boucher and Aird then punched Mr. Horton numerous times. (*Id.* at Pg ID 6, ¶¶ 28-29.)

Deputy Wakerly handcuffed Mr. Horton and he was transported to the hospital. (*Id.* ¶ 31.) There, Mr. Horton was treated for bruises to his shoulder and

arm and four displaced ribs. (*Id*. ¶ 32.) He was not treated for a mental health condition. (*Id*.)

Based on the description of the events provided by Deputies Boucher and Aird, on or about September 27, 2021, Mr. Horton was charged with a felony for resisting the officers. (*Id*. ¶ 33.) A state court judge dismissed the charges with prejudice on February 28, 2022. (*Id*. at Pg ID 7, ¶ 35.)

As indicated, Mr. Horton filed this lawsuit against Defendants on October 20, 2022. He asserts the following claims against Deputies Boucher and Aird: (I) false detention, arrest, imprisonment, and confinement; (II) malicious prosecution; (III) excessive force; and (IV) First Amendment retaliation.[1] In Count V of his Complaint, Mr. Horton alleges that Oakland County is liable for the deputies' misconduct due to "inadequate policies/procedures/customs, failure to train, [and] ratification/acquiescence[.]" (*Id*. at Pg ID 20.)

## III. Applicable Law and Analysis

42 U.S.C. § 1983 creates a federal cause of action against state or local officials who deprive a person of a civil right while acting under color of state law. A municipality is not liable for a civil rights violation simply due to an "injury

---

[1] Mr. Horton's retaliation claim is premised on his assertion that the deputies arrested him in response to his repeated claims that they were violating his civil rights by trying to forcibly remove him from his home. (*See* ECF 1 at Pg ID 16, ¶ 76.)

5

inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (citations omitted).

Instead, to prevail in a § 1983 claim against a municipality, the plaintiff must show that the alleged federal violation occurred because of a municipal "policy" or "custom." *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1997) (quoting *Monell*, 436 U.S. at 691). "It must reflect a course of action deliberately chosen from among various alternatives." *Id.* at 508 (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985)). Further, the policy or custom must "be the moving force behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010)); *see also Monell*, 436 U.S. at 694.

There are four recognized avenues for a plaintiff to establish a municipality's policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

A.   Policy

Mr. Horton alleges in his Complaint that Oakland County has "a custom, policy, or practice of tolerating the violation of constitutional rights by officers" and "maintained a custom of confusion and lack of supervision/communication between officers and supervisory personnel[.]" (ECF No. 1 at Pg ID 22-23, ¶¶ 93(h), 97.)  The Complaint, however, is devoid of facts to support these boilerplate allegations.  The only instance alleged where Oakland County employees violated anyone's civil rights is the deputies' single interaction with Mr. Horton on September 11, 2021.  In that sense, his Complaint is distinct from that in *Rosario v. Kent County*, No. No. 1:17-cv-825, 2019 WL 3296831 (W.D. Mich. 2019), where the plaintiff alleged that the county ignored (i.e. was deliberately indifferent to) his requests for medical attention over a three-month period.  *Id*. at *5.

7

Mr. Horton fails to elaborate on what "custom of confusion" existed that caused the alleged misconduct of the deputies. He offers no facts describing any instance where the county failed to supervise or communicate with employees.

A single incident of alleged misconduct does not establish a municipality's policy, practice, or custom. *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 453 (6th Cir. 2020) (citing *Thomas*, 398 F.3d at 432). The argument that a municipal-wide policy can be inferred from a single instance of misconduct, "taken to its logical end, would result in the collapsing of the municipal liability standard into a simple respondeat superior standard." *Thomas*, 398 F.3d at 432-33. There must be facts suggesting "a clear and persistent pattern of illegal activity." *Id.* at 429 (quoting *Claiborne Cnty.*, 103 F.3d at 508) (brackets omitted).

Demanding facts to render Mr. Horton's assertions plausible does not impose a "heightened" pleading standard, as he argues in response to Oakland County's motion. (*See* ECF No. 9 at Pg ID 100.) It is simply what *Twombly* and *Iqbal* require to adequately plead one's claim. *See supra*. Those requirements apply to *Monell* claims. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017) (expressly rejecting the plaintiff's argument that the "no set of facts" pleading standard in *Conley v. Gibson*, 355 U.S. 41, 56-56 (1957), survived *Twombly* and *Iqbal* with respect to *Monell* claims).

### B. Ratification

According to Mr. Horton, Oakland County sanctioned the deputies' "conduct by failing to adequately discipline or terminate officers who were known to have violated the Constitutional rights of citizens on prior occasions" and "ratif[ied] the violation of constitutional rights by officers[.]" (*Id.* at Pg ID 22, ¶ 93(g), (h).) But as the Sixth Circuit stated in response to the plaintiff's attempt to show ratification by the failure to investigate in *Brown v. Chapman*, 814 F.3d 447 (2016), "[t]his theory of municipal liability . . . applies only when the ratification was carried out by an official with final decision-making authority." *Id.* at 462 (citations omitted). Mr. Horton does not allege that any specific individual(s)—much less someone with such authority—decided to not investigate Deputies Boucher and Aird's interactions with him. Nor does he allege that there was any affirmative decision made to not investigate the incident.

Moreover, the Sixth Circuit recently addressed whether "an allegation of a *single* failure to investigate a single plaintiff's claim" of misconduct can be considered a "ratification" of that conduct, thereby subjecting the municipality to *Monell* liability, and held that it "does not suffice." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020). The court reasoned: "Because municipal liability requires an unconstitutional 'policy' or 'custom,' we have held that an allegation of a *single* failure to investigate a single plaintiff's claim does not

9

suffice." *Id.* (citing *Burgess*, 735 F.3d at 478-79; *Thomas*, 398 F.3d at 433-34). Further, a failure to discipline or terminate Deputies Boucher or Aird *after* their alleged misconduct in this single instance could not be the "moving force" behind the misconduct. *Id*. (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017)) ("Because the injury will have already occurred by the time of the specific investigation, 'there can be no causation' from that single failure to investigate"); *see also Burgess*, 735 F.3d at 479 (holding that supervisor's "after-the-fact approval of the investigation, which did not itself cause or continue a harm against [the plaintiff], was insufficient to establish the *Monell* claim").

A failure-to-investigate claim or a claim that the municipality's investigation was inadequate "requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Pineda*, 977 F.3d at 495 (quoting *David*, 706 F. App'x at 853). "That is, 'there must be multiple earlier inadequate investigations and they must concern comparable claims.'" *Id*. (quoting *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019)). Mr. Horton's Complaint identifies no prior instances where misconduct was ignored by Oakland County.

Mr. Horton also alleges that the deputies conduct was ratified "when . . . supervisory personnel . . . blatantly relied on false statements in the police reports to proceed with felony charges against Plaintiff." (ECF No. 1 at Pg ID 22, ¶ 95.)

10

This assertion is similar to the allegations in support of the municipal liability claim in *Novak v. City of Parma, Ohio*, 33 F.4th 296 (6th Cir. 2022), although there the plaintiff identified a specific individual allegedly with final policy-making authority who determined that there was probable cause to investigate the plaintiff while Mr. Horton refers vaguely to "supervisory personnel." *Id.* at 309. The Sixth Circuit found such assertions insufficient to establish a municipality's liability reasoning that "by [the plaintiff]'s lights, every city prosecutor would 'set policy' for the municipality several times a day, every time he [or she] assessed probable cause. And that cannot be the case." *Id.*; *see also Ernst v. City of Bellingham*, 177 F. App'x 652, 654 n.1 (9th Cir. 2006) (quoting *Pembaur*, 475 U.S. at 481-82) (indicating the decision to prosecute the plaintiff "did not represent municipal policy because 'the fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.'"); *see also Stockley v. Joyce*, 963 F.3d 809, 923-24 (9th Cir. 2020) (concluding that a decision to charge the plaintiff "was not a guiding principle or procedure" but "an individual charging decision based upon a particular set of facts supported by probable cause" and therefore "does not constitute municipal policy"). The Sixth Circuit further reasoned in *Novak* that even if the City's Law Director had made the final municipal determination that the officers had probable cause to arrest the

11

plaintiff, "the judge's independent determinations eliminate the causal connection. *Novak*, 33 F.4th at 309 (citing *Pembaur*, 475 U.S. at 484).

### C. Inadequate Training or Supervision

Mr. Horton alleges that Oakland County "[f]ail[ed] to properly train its officers . . . concerning seizures during an attempted civil commitment, the use of force, what constitutes First Amendment retaliation, and falsifying statements to elicit criminal charges" and lacked "proper policies, procedures, and training to deal with the circumstances that could amount to the constitutional deprivations that were inflicted here . . . ." (ECF No. 1 at Pg ID 21, ¶ 93(a), (d).) Mr. Horton also generally alleges that Oakland County "[f]ail[ed] to supervise and/or train [o]fficers to prevent violation [sic] of citizen's Constitutional rights[.]" (*Id.* ¶ 93(f).)

The Supreme Court has stated that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. The Court warned, however, that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Tuttle*, 471 U.S. at 822-23). A municipality's failure to train can subject it to liability under § 1983 only where such failure "amount[s] to 'deliberate indifference to the rights of

persons with whom the untrained employees come into contact.'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

A plaintiff alleging a failure-to-train claim must establish that (1) the municipality's training was inadequate for the tasks its employees must perform; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) "the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). With respect to "deliberate indifference" in the context of a *Monell* claim, the Supreme Court stated in *Connick*:

> "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities . . ..

563 U.S. at 61-62 (internal quotation marks and citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62

13

(quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

As Oakland County points out in its motion, Mr. Horton's Complaint is devoid of allegations concerning any past illegal activity by county employees, much less instances of violations similar to those alleged here. Thus, the Complaint lacks a factual basis to support the legal conclusion that Oakland County was deliberately indifferent to a need for more or different training to avoid unconstitutional conduct by its employees. Mr. Horton nevertheless responds that allegations of past misconduct are unnecessary, as his case involves circumstances where there is a foreseeable risk of constitutional violations if proper training is not provided. (ECF No. 9 at Pg ID 102.)

In *City of Canton v. Harris*, the Supreme Court "hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan Cnty.*, 520 U.S. at 409 (citing *City of Canton*, 489 U.S. at 390 & n. 10). As an example, the *City of Canton* Court suggested that the failure to provide use-of-deadly-force training could meet this test where a municipality supplies its officers with firearms to help arrest fleeing

felons. *City of Canton*, 489 U.S. at 390 n. 10. In this circumstance, the plaintiff must show not only that a city employee's actions caused a constitutional violation, "but also that the city's failure to train its employees caused the employee's violation *and* that the city 'culpably declined to train its employees to handle recurring situations presenting an obvious potential for such a violation.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017) (quoting *Bryan Cnty.*, 520 U.S. at 409). "'Obvious potential for such a violation' has two elements: It must be obvious that the failure to train will lead to certain conduct, *and* it must be obvious (i.e. clearly established) that the conduct will violate constitutional rights." *Id.*; *see also Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (quoting *City of Canton*, 489 U.S. at 396-97) (O'Connor, J., concurring in part and dissenting in part) (explaining that, to prevent the failure-to-train theory of liability from completely engulfing *Monell*, the municipal employee must have violated a "clear constitutional duty" and there must have been "clear constitutional guideposts" for municipalities in this area").

It is the "rare" instance where *Monell* liability can be established on a single-incident, failure-to-train theory. *Connick*, 563 U.S. at 64. In *City of Canton*, the Court identified one reason why this theory needs to be circumscribed: "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, § 1983 plaintiffs will be able to point to something the

15

city 'could have done' to prevent the unfortunate incident." 489 U.S. at 392 (quoting *Tuttle*, 471 U.S. at 823). The Court provided:

> [T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.
>
> Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

*Id.* at 390-91.

Mr. Horton's allegations are woefully insufficient to allege a plausible single-incident, failure-to-train claim. The Complaint offers only vague accusations of a lack of training across a laundry list of tasks, without any specifically identified deficiencies. It fails to identify which specific training was inadequate or lacking for which tasks, how the training was inadequate

16

or how any "inadequacy was closely related to or actually caused [his] injury." *Jackson*, 925 F.3d at 834 (quoting *Caminillo*, 434 F.3d at 469). In other words, Mr. Horton does not specify the training Oakland County obviously should have provided its deputies or the "inherently foreseeable" circumstance or "highly predictable consequence of a failure to equip [deputies] with specific tools to handle recurring situations." *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006) (explaining that the plaintiff did not plead deliberate indifference under a single incident theory as she "does not argue that it was inherently foreseeable that teachers would assault students if not trained or supervised properly"); *Winkler v. Madison Cnty.*, 893 F.3d 877, 903 (6th Cir. 2018) (finding that the plaintiff did not establish a single-incident failure-to-train claim as she "does not identify what other medical training she believes that the jail personnel should have received. Nor does she explain how the quality of the medical training provided put the County on notice of the likelihood that jail personnel would respond inadequately to an inmate's medical emergency"). There are no factual allegations to show that Oakland County was deliberately indifferent to the inadequacy of its training. Mr. Horton's allegations offer nothing more than "formulaic recitations" or "bare assertions" which have been deemed insufficient to state a plausible claim in *Twombly* and *Iqbal*.

17

### D. Custom of Tolerance or Acquiescence

The Complaint contains several paragraphs that the Court construes as attempts to establish Oakland County's liability through the custom of tolerance or acquiescence avenue. (*See* ECF No. 1 at Pg ID 21, ¶ 93(c), (e), (g), (h).) As the label suggests, a custom-of-tolerance claim requires evidence of a pattern. *See Burgess*, 735 F.3d at 478 (citing *Thomas*, 398 F.3d at 433; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989)). There must be a showing that the municipality "ignored a history of abuse." *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) (quoting *Miller*, 606 F.3d at 255). Mr. Horton pleads no facts to plausibly allege such a pattern.

### D. Conclusion

The Complaint in this matter, at least with respect to the *Monell* claim against Oakland County, fails to satisfy the pleading requirements set forth in *Twombly* and *Iqbal*. While Mr. Horton offers several paragraphs explaining how Oakland County is liable for the alleged misconduct of Deputies Boucher and Aird, they include only conclusory allegations and legal conclusions.[2]

Accordingly,

---

[2] If discovery reveals evidence of an Oakland County policy or custom, Plaintiff may move to amend his complaint and attempt to state a viable *Monell* claim against the county.

**IT IS ORDERED** that Oakland County's motion to dismiss (ECF No. 8) is **GRANTED** and this party shall be terminated from this action.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 1, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 1, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager
